People of the State of Illinois ex rel. Ernest Palmer, Acting Director of Trade and Commerce of the State of Illinois, v. Fort Dearborn Insurance Company and H. B. Hershey, Receiver, Appellee. Appeal of Jesse H. Lowe et al., Appellants.

Gen. No. 41,143.

Opinion filed November 20, 1940.

BURRY, JOHNSTONE, PETERS & DIXON, of Chicago, for appellants; ARTHUR DIXON and JOHN C. TRUSSELL, of Chicago, of counsel.

SMIETANKA, CONLON & KNAUS, of Chicago, for appellee; JOHN T. CONLON, of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This cause comes before us on an appeal brought by the claimants herein, Jesse H. Lowe, A. H. Beauchamp, Joe Roark, R. C. McLaughlin and A. R. Wynn, from a decree entered in the circuit court disallowing said claims, as had been recommended by the master's report.

Appellee's brief states, "appellants' statement of the case is fair," so we shall construe that to mean correct, and proceed upon that theory.

It appears that the claimants aforesaid each filed a claim against the Fort Dearborn Insurance Company, said company having been placed in a receivership May 15, 1933, pursuant to the liquidation laws of the State of Illinois. The claims were recommended for disallowance by H. B. Hershey, receiver of the insurance company, and were referred to a master in chancery for the taking of proofs and for his report and recommendations. Said master recommended that the claims be disallowed and the master's report was confirmed by decree entered in the circuit court on August 14, 1939.

It further appears that the claimants duly filed proof of claim with the receiver; that each proof of claim was in the form of an affidavit, together with a certified copy of judgment obtained by claimant against F. W. Currey, who was insured by Fort Dearborn Insurance Company; that subsequently additional affidavits, documents and testimony were offered in evidence in support of the claims; that the receiver or his attorney made no objection to the character, form or manner of proof and no issue is raised on the pleadings.

Claimants' theory of the case is that the claims should be allowed because they are based upon judgments obtained against F. W. Currey, an insured of Fort Dearborn Insurance Company, and that such claims arose out of the causes insured against in the insurance policy issued by said company, and for which under the law of Missouri the Fort Dearborn Insurance Company is liable to the claimants as insured third parties.

The receiver's theory of the case is that the claims should be disallowed because the Missouri statutes in question did not create a direct claim in favor of the claimants until after judgment had been entered

against the insured, and although the suits against the insured were pending prior to May 15, 1933, the judgments were not entered until after May 15, 1933, which was the date of the appointment of the receiver for the insurance company. It is, therefore, the contention of the receiver that all of the claims were contingent and not provable at the date of receivership.

It further appears from the evidence that under date of March 1, 1932, Fort Dearborn Insurance Company issued in the State of Missouri its policy No. A-813783 to F. W. Currey, a resident of Kansas City, Missouri, insuring him against liability and losses arising out of automobile accidents. The policy was in full force and effect for the period from March 1, 1932 to March 1, 1933.

It further appears that on or about August 19, 1932, Currey, the insured, was involved in an automobile accident, as a result of which the claimants herein suffered certain injuries, and on October 28, 1932, each of said claimants commenced suit against Currey in the circuit court of Jackson county, Missouri: that Currey, the insured, filed an appearance and an answer in each of said cases and was represented therein by local attorneys in Kansas City, Missouri, for the Fort Dearborn Insurance Company; that defendant failed to appear at the trial of the case, and after due hearing and the introduction of evidence, judgments in each of the cases were entered against F. W. Currey, as follows:

Judgment in favor of Jesse H. Lowe, in the amount of $3,087.50, entered February 23, 1934;

Judgment in favor of A. H. Beauchamp, in the amount of $3,000, entered February 23, 1934;

Judgment in favor of R. C. McLaughlin, in the amount of $3,000, entered March 1, 1934;

Judgment in favor of A. R. Wynn, in the amount of $3,000, entered February 23, 1934;

Judgment in favor of Joe Roark in the amount of $3,000, entered February 23, 1934.

On the petition filed and by an order entered in these proceedings on March 29, 1934, claimants were allowed to file their claims and the time to file claims was extended to April 5, 1934. Each of the claims was forwarded to the receiver by registered mail on or about March 29, 1934, and the fact of filing acknowledged by the receiver. Subsequently, the time for filing the claims in the receivership proceeding was extended to include February 28, 1935. The records in this case indicate that the receivership proceedings for the liquidation of the Fort Dearborn Insurance Company were commenced May 9, 1933, and the receiver appointed and an order of liquidation entered on May 15, 1933.

Section 5898 of the Revised Statutes of Missouri, 1929, reads in part as follows: " . . . whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company, if liability there be, shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, . . ."

Section 5899 thereof, provides as follows:

"Judgment creditor may collect insurance, when.— Upon the recovery of a final judgment against any person, firm, or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurance company, person, firm or association as described in the preceding section, and the defendant, applied to the satis-

faction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment.''

In construing these sections of the statute we find that in the case of *Schott v. Continental Auto Ins. Underwriters*, 326 Mo. 92, 31 S. W. (2d) 7, an injured third party recovered a judgment against an insured and then brought a direct suit against the insurance company to collect the insurance money. The court held that the suit might be maintained and that no garnishment or other supplemental proceedings were necessary and that (1) whenever a loss occurs the liability of the insurer to the insured becomes absolute whether or not the insurer pays the judgment against him; (2) the third party has a right to maintain a suit directly against the insurer to collect the insurance money; (3) the third party has a lien on the insurance. The court also said at page 12: ''the obligation . . . of the insurer to pay accrues the moment judgment against the insured has been rendered. . . . the Act provides that upon the recovery of a final judgment against the insured, the insurance money shall be applied to the satisfaction of such judgment. . . .

'' 'The second section establishes a temporary lien in favor of one, who has put the damages . . . in the form of a judgment, on the amount due under the policy as between the insured and the insurer. It also affords him the usual remedies of a judgment creditor.' ''

*Lajoie v. Central West Casualty Co. of Detroit, Mich.*, 228 Mo. App. 701, 71 S. W. (2d) 803, is another case involving statutes and the court in that case rejected the contention that the statute created an ''exclusive remedy'' and upheld the third party's right to proceed by garnishment if he so chose. The court in

that case said at pages 812 and 814: "The Act merely afforded a new remedy through equity.

"The result of the statute is to impound the indebtedness due the assured from the insurer for the purpose of satisfying the assured's indebtedness to the judgment creditor, and, while so impounded, to enforce its application to such satisfaction."

The State of Massachusetts has a similar statute after which the Missouri statute was patterned. In the case of *Lorando v. Gethro,* 228 Mass. 181, 117 N. E. 185, the court in interpreting the Massachusetts statute, said at page 188: "The instant statute is similar in this respect to St. 1907, c. 576, § 73, whereby there is given to a beneficiary under life insurance policies a vested interest and right of direct action on the contract of insurance against the insurer, though no party to it. . . . It merely enables the person suffering the initial damages, out of which grows the loss to the insured, to acquire a lien against the loss and the right to damages or indemnity arising under the policy, and to enforce it in his own name."

It also appears from the record that there was introduced in evidence an opinion of counsel that under the statutes and laws of the State of Missouri the claims against F. W. Currey, by reason of his insurance with Fort Dearborn Insurance Company, became and were direct claims against the insurer. No contradictory evidence was introduced in this regard.

The record further shows that the Fort Dearborn Insurance Company, or its receiver, had no defense to any claim asserted under the policy, so far as the accident of August 19, 1932, in which F. W. Currey and other claimants were concerned, and no objection was made on this ground and no contention was made that the claims did not arise out of causes insured against and covered by the policy.

The master in chancery, to whom the claims were referred, recommended that the claims be disallowed.

The said master's report was affirmed and the claims finally disallowed by decretal order entered August 14, 1939, in the circuit court.

The question arises, Did the cause of action in this case arise at the time of the accident or sometime later, as contended by appellee?

Section 5898 of the Missouri statutes, provides in part as follows:

"The liability of the insurance company , . . shall become absolute . . . whenever a loss occurs on account of a casualty covered by such contract of insurance."

In *Century Realty Co. v. Frankfort Marine Accident & Plate Glass Ins. Co.*, 179 Mo. App. 123, 161 S. W. 624, the court held that the policy indemnified against liability and that the right to indemnification arose when the accident occurred. The court at page 630, said: " . . . the right of action of the assured did not depend upon judgment first being rendered against it and payment made by it thereof but that its right to the indemnity accrued when the accident occurred for which it was liable."

The trial court by its decree seems to have determined that the claims are not allowable as the judgments rendered in favor of the claimants were entered after May 15, 1933, the date of the entry of the order providing for the liquidation of the Insurance Company. That part of the decree contains the relative dates and reads as follows:

"33. That all of said claims arose out of the same accident, occurring August 19, 1932. That it is established by the evidence that judgments were rendered in the Circuit Court of Jackson County, Missouri, in favor of the said several claimants, against one F. W. Currey, for the respective amounts claimed by the several claimants. That the Jesse H. Lowe judgment was entered March 1, 1934; the Joe Roark judgment was entered February 23, 1934; the R. C.

McLaughlin judgment was entered March 1, 1934; the A. R. Wynn judgment was entered February 23, 1934. That all of the trials were *ex parte*.

"That on May 15, 1933, at the time of the entry of the order in this proceeding, providing for the liquidation of the Fort Dearborn Insurance Company, the several suits in which said judgments were thereafter entered, were pending, and the claims of the several claimants who were plaintiffs in said suits were then unliquidated.

"That F. W. Currey, the judgment debtor in all of said suits, was a policyholder in the Fort Dearborn Insurance Company; and said policy of insurance was in full force and effect during the period from March 1, 1932 to March 1, 1933.

"That said judgments rendered in favor of said claimants, being entered after May 15, 1933, the date of the entry of the order providing for the liquidation of the Fort Dearborn Insurance Company, and in proceedings in which H. B. Hershey, the Receiver herein, was not a party, are not binding upon the Receiver herein, and do not establish any valid claim in favor of said claimants against the assets of said Insurance Company and therefore, the claims are hereby disallowed." These dates seem to have been a controlling factor when this cause was before the trial court. Under the statutes of Missouri, the liability of the company is fixed as of the time of the accident. Revised Statutes of Missouri, 1929, section 5898.

Both appellee and appellants have cited the case of *Evans v. Illinois Surety Co.*, 298 Ill. 101, in which case the court at p. 113, said: "Whether the claim is or is not provable is an entirely different question from that of a limitation upon the time when it shall be exhibited and proved. The provability of a claim depends upon its nature and character. Whether it had been exhibited in time to share in the distribution of the assets depends upon the limitation of time placed for the

filing of claims, either by statutes of limitation or by order of a court of chancery.''

In the instant case there is no dispute that the claim was filed in ample time as the court permitted.

Continuing in the *Evans* case *supra,* the court at p. 114 of its opinion, said: ''The State of Ohio, the claimant, had a contract with the insolvent surety company entered into long prior to the appointment of the receiver. This contract defined the rights and liabilities of the two parties. The surety company breached that contract,—whether before or after the appointment of the receiver is immaterial. It was breached while the contract was in full force and effect. Proof was made within the time limited by the court for exhibiting claims. In discussing what claims are provable the United States court of appeals says: 'Equitable consideration must govern and the underlying ones are these: The assets of an insolvent corporation belong to its creditors. Although not, strictly speaking, a trust fund, they partake of the nature of one. The administration of the estate is for their benefit. Its purpose is to make an equitable distribution. Equality is equity. Debts and liabilities, present and future, certain and contingent, stand upon the same equitable basis. . . . A court of equity, then, in prescribing what claims shall take in the distribution of the estate of a corporation, must regard, on the one hand, the substantial right of all creditors to share in their debtor's property, and on the other the necessity for expeditious administration, and, giving due consideration to both, must make rules which are practicable as well as equitable.' (*Pennsylvania Steel Co. v. New York City Railroad Co.,* 198 Fed. 721.) In the same case the court said (p. 741) : 'Claims which, when presented within the time limited by the court for their presentation, are certain or are capable of being made certain by recognized methods of computation, should be allowed. Claims which are not then certain should

be disallowed, because they afford no basis for making dividends. But there is no equitable reason why claims which are certain when presented and which are presented in time should have been certain at some arbitrary anterior period.' . . . In order to make a distribution possible they must, of necessity, limit the time for the proof of claims. But they have no authority to give to the filing of the bill the effect of the filing of a petition in bankruptcy, so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made.' . . . There has been no decree yet as to who are all the creditors. The court, either with or without the consent of the officers of the insolvent corporation, could not terminate existing contracts or in any manner affect the rights and remedies of the creditors and holders of obligations against the company or its property in the hands of the receiver. It made no difference whether the demands were liquidated or unliquidated, absolute or contingent. The receiver appointed derives his title from the company. He is its representative—its successor. He does not represent the creditors. The controversy in this case is between the claimant as a creditor on one side, and the company and its stockholders, represented by the receiver, on the other. No creditor of the company is opposing appellant's claim; no representative of a creditor is opposing it.''

We think the law as laid down in the case of *Evans v. Illinois Surety Co.*, 298 Ill. 101, and also in *Evans v. Illinois Surety Co.*, 319 Ill. 105, brings the instant case within the purview of the law as set forth in both of the foregoing cases.

In the instant case no one has insisted that there was not sufficient evidence but, as heretofore stated, the receiver relies upon the fact that the claim was not reduced to judgment before the order for the appointment of a receiver was entered here. That could be

very well accounted for because of the fact that one cannot get a judgment instanter in most jurisdictions unless it is a judgment by confession in which the amount is fixed. Even if dates are important or controlling, we think we have a right to assume that other jurisdictions have the natural delays in getting cases at issue, and where there are other cases pending, the contestants have to wait until their case is reached in turn. How inequitable it would be to penalize a claimant who had a just claim, because of a delay he could not avoid.

So, in the instant case, we do not think the claims of the appellants should be disposed of by a technical consideration of dates. No objection is made as to the amount of the claims or the validity thereof. These claims were filed in a court of equity and therefore equitable rules should have been applied. *Evans v. Illinois Surety Co.*, 298 Ill. 101. No objection is made as to the *quantum* of proof to sustain the claims, or that the judgments were not valid. No distribution has been made. As before stated, they were filed within the time fixed by the trial court, and we think from an equitable consideration of the transaction should have been allowed.

For the reasons; herein given the decree of the circuit court is reversed and the cause is remanded with directions to allow the said claims against the assets of said estate, to be paid in due course of administration.

*Decree reversed and cause remanded with directions.*

HEBEL, P. J., and BURKE, J., concur.