Leroy STEFFENS, Appellant,

v.

**AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN and Employers Mutual Casualty Company, Appellees.**

No. 53985.

Supreme Court of Iowa.

Nov. 10, 1970.

Janss, Dreher, Wilson & Adams, Des Moines, for appellant.

Patterson, Lorentzen, Duffield, Timmons & Irish, Des Moines, for appellee American Standard Ins. Co. of Wisconsin.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee Employers Mutual Casualty Co.

UHLENHOPP, Justice.

The decisive question here is whether our direct action statute constitutes the only remedy an injured third person has against a liability insurer. See Code, 1966, §§ 516.1–516.3.

Plaintiff alleges in substance in his amended petition that he was injured while riding in an automobile driven by one Proehl. Defendants insured Proehl at the time against liability. Plaintiff sued Proehl and as a result of the suit recovered judgment against him on July 11, 1967. The judgment was not paid. A writ of execution issued upon the judgment. Proehl's causes of action against defendants were levied on and were sold to plaintiff at sheriff's sale on February 11, 1969. Plaintiff says he is therefore entitled to recover against defendants upon Proehl's causes of action against them.

Defendants each moved to dismiss on the ground, among others, that the Iowa direct action statute is plaintiff's exclusive remedy and plaintiff did not sue defendants within 180 days as that statute requires. Code, 1966, § 516.3.

The trial court sustained defendants' motions.

Plaintiff's action is not under the Iowa direct action statute and the appeal has boiled down to whether that statute constitutes a third-party's only remedy against a liability insurer. But that question necessarily involves a preliminary question: would plaintiff be able to hold defendants in the manner in which he has proceeded had the direct action statute not been enacted?

I. Could plaintiff recover under his amended petition if we had no direct action statute?

Policies of the kind with which we are concerned are of two main types: indemnity policies and liability policies. In an indemnity policy, the insurer promises to make payment after the insured has paid the injured third person, while in a liability policy, the insurer promises to make payment when the insured becomes legally liable to the third person. Zieman v. United States Fidelity & Guar. Co., 214 Iowa 468, 238 N.W. 100; Cushman v. Carbondale Fuel Co., 122 Iowa 656, 98 N.W. 509 (indemnity); Seeberger v. Wyman, 108 Iowa 527, 79 N.W. 290 (liability).

When a liability policy is involved and the insured has become legally liable to the third person, as by a judgment in favor of the third person and against the insured, a debt arises from the insurer to its insured. If the insurer does not pay, the insured as promisee in the policy has a cause of action against the insurer. Dewalt v. State Farm Mut. Auto. Ins. Co., 99 F.2d 846 (8th Cir.), cert. denied, 306 U.S. 644, 59 S.Ct. 583, 83 L.Ed. 1043; 12 Couch, Insurance 2d, § 45:768 at 667. The third person may reach the debt of the insurer to the insured in any manner provided in the civil practice of the jurisdic-

tion for seizing such a chose in action. Depending on such practice, the judgment creditor may, in the main, file a creditor's bill in equity against the insurer; or levy execution on the judgment debtor's chose in action against the insurer, sell it on execution, and, if he buys it himself, sue the insurer on it; or, most commonly, garnish the insurer under execution. Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98; General Guar. Ins. Co. of Fla. v. DaCosta, 190 So.2d 211 (Fla.App.) (debt of insurer subject to levy under execution under Florida practice); Fidelity & Cas. Co. of New York v. Southhall, 435 P.2d 119 (Okla.); Helms v. Chandler, 423 Pa. 77, 233 A.2d 30; 12 Couch, Insurance 2d, § 45:769 at 668. As stated in Note, 15 Iowa L.Rev. 73: "If the policy insured against liability, imposed because of injuries caused by casualties covered by the policy, the rendition of the judgment against the insured made the insurer liable to him for the amount of the policy, which was then an asset of the insured and could be taken for his debt by garnishment or any other remedy offered to creditors in such a situation." See also Lewis, Insurer's Liability to Insured for Judgment Exceeding Policy Limits, 7 Drake L.Rev. 23, 34–35.

■ Looking to the facts here, defendants' policies are clearly of the liability type. They do not contain the language usually found in indemnity policies to the effect that the insurer will indemnify the insured for such sums as the insured *pays* third persons. Instead, the insuring agreement of each defendant is "To pay on behalf of the insured all sums which the insured shall become *legally obligated to pay*". (Italics added.) Proehl has become legally obligated to pay plaintiff; the event insured against has occurred.

■■ Plaintiff did not file a creditor's bill against defendants or garnish them, under Code, 1966, §§ 630.16 or 626.26. Instead he levied execution on Proehl's causes of action and purchased them at sheriff's sale. At common law, choses in ac-

tion could not be reached by execution. 30 Am.Jur.2d Executions § 136 at 517; 33 C. J.S. Executions § 28 at 158. But Iowa has adopted the broad form of statutory execution authorizing levy on choses in action, in Code, 1966, § 626.21: "Judgments, money, bank bills, and other things in action may be levied upon, and sold or appropriated thereunder, and an assignment thereof by the officer shall have the same effect as if made by the defendant." This court has not given the statute a restricted application. Brenton Bros. v. Dorr, 213 Iowa 725, 239 N.W. 808 ("thing" in action equated to "chose" in action, and unliquidated chose in action held subject to levy). See Heiserman, Procedure Available for Implementation of a Judgment in Iowa, 42 Iowa L.Rev. 265, 273; Risenfeld, Collection of Money Judgments in "American Law, 42 Iowa L.Rev. 155, 181. Thus plaintiff has stepped into the shoes of the insured here, holds the insured's causes of action against defendant insurers, and can sue them on those causes of action—unless our direct action statute is plaintiff's exclusive remedy.

II. Is our direct action statute exclusive?

The pertinent parts of the statute are §§ 516.1 and 516.3, Code, 1966:

"All policies insuring the legal liability of the insured, issued in this state by any company, association or reciprocal exchange shall, notwithstanding any other provision of the statutes, contain a provision providing that, in event an execution on a judgment against the insured be returned unsatisfied in an action by a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced his claim against such insurer had such insured paid such judgment."

"Said action may be brought against said insurer within one hundred eighty days from the entry of judgment in case no appeal is taken, and, in case of appeal, within

one hundred eighty days after the judgment is affirmed on appeal, anything in the policy or statutes to the contrary notwithstanding."

     Strictly, a direct action statute allows the third party to sue the insured and insurer together at the outset or even to sue the insurer alone. Vance, Insurance, § 178 (3rd ed.); Note, 15 Iowa L.Rev. 73; Note, 74 Harv.L.Rev. 357. The Iowa version of direct action statute (sometimes called an inurement statute) requires the third party first to obtain judgment against the insured and hold an unsatisfied execution after levy. If the third party's action against the insurer is under the Iowa direct action statute, it must indeed be brought within 180 days. Pries v. M. F. A. Mut. Ins. Co., 255 Iowa 442, 122 N.W. 2d 925. Since the present action was not brought under the direct action statute, the question is whether that statute preempted the field so that an action under the statute is plaintiff's only remedy.

What was the reason for enactment of our direct action statute? It was not enacted to cut down the rights of third persons. Neither was it enacted because third persons were without a remedy in the liability insurance situation, for they could reach the insurer by use of the procedural tools already enumerated. Rather, it was enacted to provide relief to the third person in the indemnity insurance situation. There, if the insured could not pay the third person, the insured could not recover from the insurer, and so the hapless third person could not recover either. Vance, Insurance, § 178 (3rd ed.).

     Our legislature enacted the direct action statute in present form in 1935. 46 G.A. ch. 97, §§ 1–3. Nothing in the act indicates that the third party's traditional remedies under liability policies are abrogated. Had the General Assembly intended the direct action to supplant existing remedies, likely it would have said so. Section 1 of the act merely requires insurers to incorporate a direct action clause in their policies; but a provision requiring a direct action clause is not a provision nullifying other remedies. Section 3 contains the limitation of 180 days. But this section does not say the direct action is the only remedy the third party has, nor does it say the direct action "must" or "shall" be brought. It says a direct action "may" be brought. As stated in Pries v. M. F. A. Mut. Ins. Co., 255 Iowa 442, 444, 122 N. W.2d 925, 927, "The word 'may' as used in this section gives the judgment creditor permission to bring the action, if he desires. Use of the word 'must' in place of 'may' in this particular statute would make it mandatory to bring the action." The closing words of § 3 provide that the limitation of 180 days applies, "anything in the policy or statutes to the contrary notwithstanding." But the quoted words have to do with the direct action brought under the statute, not to actions not brought under the statute. Actions brought under the direct action statute may be brought within 180 days despite any provisions of the policy or statutes—the period of 180 days for the direct action is not to be cut down by any such provision.

Authorities who have considered the problem have concluded that direct action statutes do not supplant existing remedies of third parties against insurers. The court stated in Pogline v. Central Mut. Ins. Co., 280 Ill.App. 5, 8: "We do not believe it was the intention of the legislature or of appellant or the insured in this policy to restrict the owner of the judgment in the pursuit of any remedies that might be open to him, nor is there any reason suggested why the word 'may' as used in the statute and in the policy should be construed to mean 'shall.'" To same effect, see Bartkowski for Use of Block v. Commercial Cas. Ins. Co., 275 Ill.App. 497. After holding the Missouri direct action statute to be only cumulative, the court said, regarding the preexisting statutory remedies, in Lajoie v. Central West Cas. Co., 228 Mo.App. 701, 710, 71 S.W.2d 803, 809: "The right given by our statutes to enforce the pay-

ment of a judgment by reaching and applying to the satisfaction thereof, through execution and garnishment, any indebtedness found to be due the judgment defendant in the hands of third parties has existed for many years. * * *" See also State ex rel. Anderson v. Dinwiddie, 359 Mo. 980, 984, 224 S.W.2d 985, 987 ("But it is held in several cases that the remedy is cumulative, and that recovery may also be had by garnishment of the insurer under the judgment against the insured.") ; People ex rel. Palmer v. Ft. Dearborn Ins. Co., 307 Ill. App. 194, 30 N.E.2d 139 (applying Missouri law). This court itself, in applying Missouri law, had this to say in Eggermont v. Central Surety & Ins. Corp., 236 Iowa 197, 200, 17 N.W.2d 840, 841–842: "The nature of the remedy provided by section 6010 [the Missouri direct action statute] is essentially that of a creditor's bill or equitable garnishment. * * * The remedy provided by section 6010 is not exclusive." See similar holdings in Pennsylvania Cas. Co. v. Phoenix, 139 F.2d 823 (10th Cir.) ; Poole v. Travelers Ins. Co., 130 Fla. 806, 179 So. 138. See also Morehouse v. Employers' Liability Assurance Corp., 119 Conn. 416, 177 A. 568; Ferguson v. Manufacturers' Cas. Ins. Co., 129 Pa.Super. 276, 195 A. 661.

The commentators hold the same view. This is said in 22 Appleman, Insurance Law & Practice, § 14565 at 608 (1947):

"After recovering a judgment against one insured under a liability policy, an injured third person may collect such judgment by instituting garnishment proceedings against the liability insurer. The amount of the policy to the extent of liability incurred by the insured is deemed to be an asset of the insured. *Nor is this result altered by the enactment of statutes giving such person a direct cause of action against the insurer where such a judgment is unpaid.*" (Italics added.)

And this is stated in 2 Long, Law of Liability Insurance, § 20.05 at 20–17 (1970):

"Aside from direct action on the policy, the remedies available to a judgment creditor will be found in the code of civil procedure adopted by the particular state where collection of the judgment is sought."

See also 38 C.J.S. Garnishment § 110 at 319 ("The fact that the policy expressly authorizes the creditor to sue insurer, or that the creditor has other remedies, such as a creditor's bill, does not preclude garnishment.").

We conclude that our direct action law is not the exclusive remedy of a third person.

We do not say that plaintiff is entitled to recover from defendants. Plaintiff occupies Proehl's shoes. Whether defendants have defenses against Proehl is not before us. All we now hold is that plaintiff's amended petition is good against the motions to dismiss.

Reversed.

All Justices concur.